**B. P. BOOS, Appellant,**

v.

**RAILWAY EXPRESS AGENCY, Inc.,**
**Appellee.**

**No. 15898.**

United States Court of Appeals
Eighth Circuit.

April 23, 1958.

Ken C. Graves, Rapid City, S. D. (Roswell Bottum, Rapid City, S. D., on the brief), for appellant.

H. R. Hanley, Rapid City, S. D. (Hanley, Costello & Porter, Rapid City, S. D., on the brief), for appellee.

Before GARDNER, Chief Judge, and VOGEL and VAN OOSTERHOUT, Circuit Judges.

GARDNER, Chief Judge.

This case involves the validity of an award and order of the Third Division of the National Railroad Adjustment Board. Appellant brought this action to enforce an order of the board which in effect required appellee to restore a position theretofore abolished and compensate appellant for salary lost by reason of the abolishment of the position and his consequent unemployment.

While Section 153(p), 45 U.S.C.A. provides that in an action to enforce an award of the National Railroad Adjustment Board "the findings and order of the division of the Adjustment Board shall be prima facie evidence of the facts therein stated", the parties to this action stipulated as to all the facts pertinent to the issues and in the stipulation recited that:

"* * * such admitted facts are herein consolidated and amplified in the following Statement of Facts, which facts are hereby stipulated by the parties hereto to be the facts involved in this suit and are presented to the Court as such * * *."

There was no evidence submitted but the action was tried and determined upon the facts as so stipulated. Both parties moved for summary judgment and hence there is no question involved as to the propriety of determining the issues by a summary judgment, neither is there any issue involved as to what consideration or effect, if any, should be given the findings and order of the National Railroad Adjustment Board. The question is considered in the following cases: Kirby v. Pennsylvania R. Co., 3 Cir., 188 F.2d 793; Thomas v. New York, Chicago & St. Louis R. Co., 6 Cir., 185 F.2d 614; Washington Terminal Co. v. Boswell, 75 U.S.App.D.C. 1, 124 F.2d 235. The trial in the District Court is a trial de novo. We shall refer to the parties as they were designated in the trial court.

The trial court in its opinion fairly summarized the pertinent facts as stipulated as follows:

"Pursuant to a contract of March 1, 1929, between the defendant, Railway Express Agency, Inc., and the railroads of this country, the defendant conducts express business as the agent of the railroads. Prior to December 1, 1939, the defendant rendered such service, under the 1929 contract, to the Chicago and Northwestern Railway Company on its train service between Rapid City and Newell, South Dakota. On that date the Railway discontinued such train service and entered into a special contract with the defendant by which the defendant agreed to furnish the Railway, subject to the Railway's direction and control, truck service for the transportation of freight and express over the Rapid City to Newell route. This special contract provided for cancellation by either party on thirty days notice. From December 1, 1939, until January 1, 1951, defendant furnished such truck service to the Railway.

"The plaintiff, B. P. Boos, entered the employment of the defendant on January 29, 1940, and, at all times since that date, has been a member of the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees. From May 13, 1946, until January 1, 1951, plaintiff was assigned to a chauffeur position on the truck service rendered to the Railway by the defendant over the Rapid City to Newell route.

"At all times pertinent in this suit, the defendant and its employees represented by the Brotherhood mentioned above have been governed by a collective bargaining agreement entered into by them on August 1, 1937, and renewed, in sub-

stantially the same form, on October 1, 1940, and on September 1, 1949. The bargaining agreement, entitled Agreement Governing Hours of Service and Working Conditions, sets forth the mutual rights and ployee, and, in Article XI—Rule obligations of employer and em-79–A, provides:

" 'Established positions shall not be discontinued and new ones created under the same or different titles covering relatively the same class of work which will have the effect of reducing the rate of pay or evading the application of these rules.'

"In order to comply with its obligation to other railroads that all of the express operations be conducted on a profitable basis, the defendant, on November 30, 1950, gave notice to the Railway of the necessity for granting authority for a rate increase on the Rapid City to Newell route, which had been operated at a loss for over two years prior thereto. The Railway refused the request and agreed to the termination of the special contract. Consequently, upon the termination of the special contract on December 31, 1950, the chauffeur position of the plaintiff was abolished.

"Subsequent to the termination of the special contract, the Railway contracted or arranged on some basis with Rousch Transfer Company to handle express and freight over the route in question. The work thereafter performed by Rousch, whose employees have no rights under the bargaining agreement, has been substantially the same as had been previously performed by the defendant. The defendant had no voice in any arrangements made between the Railway and Rousch, and has had nothing whatsoever to do with the haulage over this route since January 1, 1951. The defendant does maintain terminal offices at towns along the route at which express is received from and delivered to Rousch, such terminal activities being performed by defendant as the agent of the Railway under the 1929 contract.

"It is admitted that at all times pertinent in this suit, the work of carriage of express matter between Rapid City and Newell was the property of, and belonged to, the Railway, and that defendant when operating the truck route was the agent of the Railway. * * *

"Upon the abolition of his position, plaintiff chose not to take another position with the defendant and voluntarily placed himself on the furlough roster, where he has been carried ever since."

The court, being of the view that when the special contract between the defendant and the Chicago and Northwestern Railway Company was terminated the work within the scope of the bargaining agreement between the defendant and the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees no longer existed, entered judgment dismissing plaintiff's complaint on its merits.

Plaintiff seeks reversal on various grounds but it seems to us that the stipulated facts are such as to preclude plaintiff from any right of recovery on the claims urged. He was employed by the defendant express company. That company had a contract with the Chicago and Northwestern Railway Company and it is stipulated:

"That Defendant herein in the conduct of express business is strictly an agent of railroads as principals engaging the services of Defendant in the express business."

And as noted by the trial court:

"It is admitted that at all times pertinent in this suit, the work of carriage of express matter between Rapid City and Newell was the property of, and belonged to, the Railway, and that defendant when operating the truck route was the agent of the Railway."

On December 31, 1950, the contract between the defendant and the railway company was terminated and defendant ceased to handle or transport express over the route of the railway company between Rapid City and Newell, South Dakota. With the cancellation of this contract the position which plaintiff theretofore held with the defendant was abolished. As a matter of law the primary obligation of supplying express service to the public was that of the railroad. Memphis & Little Rock R. Co. v. Southern Express Co., 117 U.S. 1, 6 S.Ct. 542, 628, 29 L.Ed. 791. It is to be observed too that it is stipulated as a matter of fact that the express company conducts its express business as agent of the railway. The railway company terminated that agency and transferred to another agency the express handling and hauling work that had theretofore been performed by the defendant. The defendant was at all times performing the work of the railway company and when its contract with the railway company was cancelled the railway company's work which it had been performing was transferred by the railway company to another agency and with the termination of defendant's agency contract the position theretofore held by the plaintiff no longer existed. The provision of the collective bargaining agreement relied upon by the plaintiff reads as follows:

"Established positions shall not be discontinued and new ones created under the same or different titles covering relatively the same class of work which will have the effect of reducing the rate of pay or evading the application of these rules."

Obviously, when the railway company withdrew the work from the defendant then all of the work which it had been performing for the railway company left its control and thereafter was not within the scope of the bargaining agreement. So long as the defendant was performing the express haulage work and there was need for the performance of the work being performed by the plaintiff, the work was assigned in strict accordance with the bargaining agreement.

We do not think the collective agreement can be so construed as to vest absolute ownership interest of the work in defendant's employees. To so construe the contract would lead to an absurdity. Such construction would require the defendant express company to continue such non-existent work and pay the employee for performing no work for the rest of his life. The trial court, referring to the contention that plaintiff was entitled to be restored to and be compensated for performing non-existing work, said:

"* * * it is difficult to imagine what kind of an effective order this Court could enter that would restore the work to the plaintiff, since it must be remembered that the Court has no jurisdiction over the Railway which admittedly controls the work * * *."

In this connection it is to be observed that it was not the express company that turned over the work which plaintiff had formerly been performing to the employees of the Rousch Transfer Company. That was done by the railway company, and it must be borne in mind that the railway company was not a party to this proceeding, nor was it a party to the collective bargaining contract. What occurred here was that work fundamentally the responsibility of the railway company under the law and under the "Express Operations Agreement" between the railway company and the express company was removed from one agency and placed with another. The good faith of defendant in connection with the cancellation of its contract with the railway company is not questioned.

As our conclusion on the issues herein considered necessitates the affirmance of the judgment appealed from we pretermit discussion of the other questions discussed by counsel for the respective parties. The judgment appealed from is therefore affirmed.