C. E. RUSS
v.
SOUTHERN RAILWAY COMPANY.
Civ. A. No. 4339.

United States District Court
E. D. Tennessee, N. D.
April 12, 1963.

W. E. Fitzgerald, Knoxville, Tenn., Marshman, Hornbeck, Hollington, Steadman & McLaughlin, Cleveland, Ohio, for plaintiff.

Clyde W. Key, Knoxville, Tenn., for defendant.

ROBERT L. TAYLOR, Chief Judge.

This action arises under Section 3, First (p) of the Railway Labor Act[1] (45 U.S.C. § 153) and seeks enforcement of an award and order of the National Railway Adjustment Board issued pursuant to sub-paragraphs (m)[2] and (o)[3] of Section 3, First.

The question for determination is whether Award No. 19846 and the order of the Board commanding the Railroad to reinstate plaintiff, C. E. Russ, to service and for back pay from September 27, 1958 is a valid and enforceable order. The Fireman Cox had been previously reinstated by the Railroad as of that date without back pay.

Brotherhood of Locomotive Engineers, which was the collective bargaining agent for the employees of the Southern Railway Company, brought a claim on behalf of Russ and Cox before the First Division of the National Railroad Adjustment Board "for restoration to the service and pay for time lost." The Board, with Referee Arthur W. Sempliner, after a full hearing, made an award on January 31, 1961, which reads in pertinent part as follows:

"Claim for restoration to service and pay for time lost by Engineer C. E. Russ and Fireman J. D. Cox, dismissed from service May 15, 1958. Claimants were the engine crew on a train which collided with a track motor car. A warning had been given the claimants by the Track Supervisor that a motor car was on the track ahead, but the warning did not detail that the motor car would stop for track inspection. At the time of the impact, the motor car was moving at slow speed forward.

"It is apparent that the operator of the track motor car was in viola-

1. "(p) If a carrier does not comply with an order of a division of the Adjustment Board within the time limit in such order, the petitioner, or any person for whose benefit such order was made, may file in the District Court of the United States for the district in which he resides or in which is located the principal operating office of the carrier, or through which the carrier operates, a petition setting forth briefly the causes for which he claims relief, and the order of the division of the Adjustment Board in the premises. Such suit in the District Court of the United States shall proceed in all respects as other civil suits, except that on the trial of such suit the findings and order of the division of the Adjustment Board shall be prima facie evidence of the facts therein stated, and except that the petitioner shall not be liable for costs in the district court nor for costs at any subsequent stage of the proceedings, unless they accrue upon his appeal, and such costs shall be paid out of the appropriation for the expenses of the courts of the United States. * * *"

2. "(m) The awards of the several divisions of the Adjustment Board shall be stated in writing. A copy of the awards shall be furnished to the respective parties to the controversy, and the awards shall be final and binding upon both parties to the dispute, except insofar as they shall contain a money award. In case a dispute arises involving an interpretation of the award, the division of the Board upon request of either party shall interpret the award in the light of the dispute."

3. "(o) In case of an award by any division of the Adjustment Board in favor of petitioner, the division of the Board shall make an order, directed to the carrier, to make the award effective and, if the award includes a requirement for the payment of money, to pay to the employee the sum to which he is entitled under the award on or before a day named."

tion of various safety rules, among which was his failure to obtain the line-up, and his failure to protect his car by the use of torpedos, or other signal devices. This failure was the proximate cause of the accident. The Interstate Commerce Commission investigated the accident. Its report of the facts is in accord with the record, and for the cause of the accident, the report says: 'This accident was caused by failure to provide adequate protection for the movement of a track motor car.'

"The question exists, however, that while the proximate cause of the accident was the responsibility of others than the claimants, was there a violation of the carrier's rules by claimants, sufficient to warrant the punishment imposed? A warning had been given that a track motor car was in the area ahead. The obligation then existed to operate the train at a reduced speed, prepared to stop within the assured clear distance ahead. The accident was, per se, evidence of the violation of the rule. However, the docket further discloses that on September 27, 1958, claimant J. D. Cox was restored to service on a leniency basis, without pay for time lost, as carrier was of the opinion the discipline thus far assessed was sufficient punishment for his offense. The organization makes no reply to this position. The issue is not one of the degree of claimants' responsibilities and we need not define the extent of each. The carrier having determined that the punishment for one was sufficient, there is a wide disparagement in the punishment of the other, which cannot be justified. The claim of C. E. Russ should be sustained to the extent that he should be restored to service as of September 27, 1958, with full compensation from that date, and seniority rights unimpaired. The claim of J. D. Cox should be denied in accord with these findings."

On the same day, the Board ordered the Railroad to make the award effective, and to pay the sum awarded by March 2, 1961.

The Railroad refused to comply with the order. It did direct Russ to report for duty on July 20, 1961. This action, originally joined in by the Brotherhood of Locomotive Engineers, was brought to enforce the award for full compensation from September 27, 1958 and for attorneys' fees. Jurisdiction was based on 45 U.S.C. § 153, First (p) and 28 U.S.C. §§ 1331 and 1337. Subsequently, the Brotherhood was by order dropped as a party plaintiff.

Plaintiff claims the award is valid and should be enforced by this Court. It is asserted that the Board correctly determined that there was a grievance properly before it for adjustment and that it had the authority to determine "just cause" for discipline and that "just cause" includes the right to determine the degree of punishment which should be imposed on the employee for violation of the railroad safety rules. Plaintiff also claims that he did not violate any of the operating rules of the Company and no "just cause" existed for his discharge. But even if a technical violation of any of the operating rules occurred, plaintiff was blameless for such violation and that the accident resulted from the proximate negligence of the operator of the motor car—the person who lost his life. Hence, plaintiff was unjustly discharged.

The Railroad insists that the award is not enforceable because it is arbitrary, capricious, without evidence to support it, contrary to the law and the facts before the Board, and contrary to the principle established by prior awards of the Board, namely, that where discipline is administered for valid cause by Management, the Board will not substitute its judgment for that of Management or disturb the discipline unless the Management acted in bad faith or arbitrarily or capriciously.

45 U.S.C. § 153, First (p) provides in part that:

"* * * The district courts are empowered * * * to enforce or

**637**

set aside the order of the division of the Adjustment Board."

Thus, the only power given to the Court under this Section is to enforce or set aside the order. It is without power to grant other relief. Kirby v. Pennsylvania R. R., 188 F.2d 793 (C.A. 3), footnote 11, at page 796; Union Pacific Railroad Co. v. Price, 360 U.S. 601, 79 S.Ct. 1351, 3 L.Ed.2d 1460.

The burden is upon defendant to show that the award is wrong. Elgin, Joliet & Eastern Railway Co. v. Burley, et al., 327 U.S. 661, 664, 66 S.Ct. 721, 90 L.Ed. 928.

The award carries with it a presumption of validity. Brotherhood of Railway & Steamship Clerks, Freight Handlers, Exp. and Station Emp. v. Railway Express Agency, 238 F.2d 181 (C.A.6).

The Board was set up under Section 3, First (i), to adjust "disputes between an employee or [a] group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements * * *." Brotherhood of Railway Trainmen v. Chicago River & Indiana Railroad, 353 U.S. 30, 33, 77 S.Ct. 635, 637, 1 L.Ed.2d 622.

Various courts have used language in their decisions to the effect that awards of adjustment boards involve a certain expertise and have a certain special validity. But, where there is a money award with enforcement proceedings under Section 3, First (p), many courts have held that the trial is de novo. The only weight attached to an award is that, when filed, it creates a prima facie case. Boos v. Railway Express Agency, 253 F.2d 896 (C.A.8).

In Thomas v. New York, Chicago & St. Louis R. R. Co., 185 F.2d 614 (C.A.6), a non-union steward on a railroad sought reinstatement. The Sixth Circuit held that an enforcement suit under sub-section (p) is "a suit de novo in which findings of the Adjustment Board are not final and binding on the District Court as to either facts or law." But, the Board cannot write a contract for the parties or create substantial legal rights. It pointed out that the Railway Labor Act did not abrogate the employer's right to hire or discharge employees. See Order of Sleeping Car Conductors, et al. v. Pullman Co., 47 F.Supp. 599 (D.C.Wisc.); Crist v. Public Belt R. R. Commission for City of New Orleans, 93 F.Supp. 103 (D.C.La.); Ward v. New Orleans Public Belt Railroad Commission, 97 F.Supp. 1002 (D.C.La.).

The case of Brotherhood, etc. v. Railway Express Agency, 238 F.2d 181 (C.A. 6) involved the restoration of an employee to employment following military service. In that case, it was held that the Board was given the first opportunity to pass on the question, and the person who seeks to set aside the award of the Board has the burden of showing that the award is wrong.

With respect to the weight to be given the findings and order of the Board, the Court in Washington Terminal Co. v. Boswell, 75 U.S.App.D.C. 1, 124 F.2d 235, 241, 242 said in part:

"The statute also relieves the employee of another burden. It provides that the enforcement suit 'shall proceed in all respects as other civil suits, except that on the trial * * the findings and order of the division of the Adjustment Board shall be prima facie evidence of the facts therein stated.' 45 U.S.C.A. § 153, First (p). The burden of proof, in making a prima facie case, may be financial as well as procedural, and it may be heavy. The statute relieves the employee of this, at least to some extent, when he introduces the findings and order in evidence. Though they may not make his case finally, they do so initially. They also bring to the court the weight of decision on facts and law by men experienced in contracts, disputes and proceedings of this special and complicated character. The whole adjustment procedure up to the point of award, findings and order by the Board, appears to be constructed upon the idea that it is not the business of lawyers, but is the business of railroad men,

workers and managers alike. That does not make their findings and decisions less probative; rather it should make them more so. They know the language, functions and purposes of railroads and of their collective agreements. Their judgment is informed by experience in negotiating and administering these contracts. Because of this they, perhaps better than lawyers, are qualified to interpret and apply them. Whether so or not, their judgment should carry weight when the judicial stage of controversy is reached. It cannot be assumed, therefore, that the findings have no substantive effect, merely because they were not given finality, as to either facts or law. They are probative, not merely presumptive in value, having effect fairly comparable to that of expert testimony."

In a dictum in Gunther v. San Diego & Arizona Eastern Railway Co., D.C., 161 F.Supp. 295, 297, the Court said:

"The Act creating the National Railroad Adjustment Board represents a considered effort on the part of Congress to provide effective and desirable administrative remedies for adjustment of railroad-employee disputes growing out of the interpretation of existing agreements. Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 243, 70 S.Ct. 577, 94 L.Ed. 795. *By the Act there was designated an agency peculiarly competent to handle the controversies thus arising; it was intended to leave a minimum responsibility to the courts in such matters, but also the rights clearly revealed by the interpretation of the Board are to be protected by the courts in proceedings under the Act.* Order of Ry. Conductors of America v. Pitney, 326 U.S. 561, 566, 66 S.Ct. 322, 90 L.Ed. 318.

\* \* \* \* \*

"Findings and orders of the Board are prima facie evidence of the facts therein stated (Title 45 U.S.C.A. Section 153(p)), *and the carrier seeking to upset the award carries the burden of showing it is wrong.* Elgin, J. & E. R. Co. v. Burley, 327 U.S. 661, 664, 66 S.Ct. 721, 90 L.Ed. 928." (Emphasis added.)

Russ was sixty-six years old at the time of the accident. He started to work for the Railroad in 1922 and was promoted to engineer in 1942. The accident, which is the subject of this controversy, was his first as an engineer and occurred on May 8, 1958. On that day, he was engineer on Freight Train, Extra 2152 which departed from Youngstown Yard, Louisville, Kentucky, travelling west at about 1:00 p. m. for Princeton, Indiana. This line consisted of approximately 109 miles of single track over which trains are operated by time table, train orders and an automatic . block signal system. The train consisted of two diesel engines, 11 cars and caboose, two loaded and 9 empties, which weighed 293 tons.

J. D. Cox was the fireman. As the train travelled west towards Princeton and while within about one-half mile of Ramsey, the operators met a motor car with a small crew that was operated by Tames, Assistant Supervisor. The train and motor car stopped and the motor car backed into Ramsey and the train continued to go forward and entered the side track at Ramsey. As it passed the motor car, Tames hollered to Russ while about 15 feet from him that another motor car was in front of Russ. Russ did not stop the train when he received this information because he was not requested to do so. Prior to reaching Ramsey, Russ had been running his train between thirty to thirty-five miles an hour, but after passing Ramsey he reduced it to around fifteen miles an hour. He told Cox about Tames' message with respect to the motor car being in front and this was the reason he was running at a reduced speed of between fourteen and fifteen miles per hour. After passing through the tunnel between Ramsey and DePauw and while traveling around a left curve of a rock cut, going downgrade, Cox yelled language to him which meant

to put the train in emergency. Russ couldn't see while going around the curve. Cox could only see about two car lengths ahead. Upon receiving the message from Cox to the effect that the motor car was on the track and to put the train in emergency, he put the emergency brakes on the cars, but did not put the emergency brakes on the engines for the reason it would have flattened the wheels.

He stated that if he had put the brakes on the engines it would have stopped the train in one-half the distance that it did stop.

Cox corroborated the testimony of Russ as to the speed of the train being around fifteen miles per hour and as to the circumstances surrounding the accident. He did not advise him that he was running too fast.

J. P. Mumford, who was Division Superintendent of the Railroad for the St. Louis Division, conducted the investigation of the accident and discharged Russ because of violation of the safety rules of the Company. He stated in substance that when Russ was notified by Tames of the motor car being on the track between Ramsey and Milltown, which was only six miles away, that he should have run at a reduced speed, which means at a speed that would enable him to stop the train short of another train or object on the track. He stated that he considered Russ one of his better engineers until the accident.

Mr. Tolleson, Executive Vice President and second in command of the Railroad, corroborated Mr. Mumford and was of the opinion that Russ violated the safety rules of the Company in failing to run at a reduced speed when he was notified that a motor car was on the track and that the disciplinary action taken by the Company for such violation was justified.

The Board held in effect that Russ was warned that a track motor car was on the track in the area ahead and that this obligated him "to operate the train at a reduced speed, prepared to stop within the assured clear distance ahead. The accident was, per se, evidence of the vio-

lation of the rule." We think the evidence sustains this finding of the Board.

It is the insistence of the Railroad that a finding that Russ violated a safety rule of the Company gave it the right to discipline Russ by the discharge of him from the service of the Company and that the reinstatement of him by the Board as of September 27, 1958 with back pay was a substitution of its judgment for that of Management, something it did not have the legal right to do. In support of this insistence, the case of Tinnon v. Missouri Pacific Railroad Company, 282 F.2d 773 (C.A.8) was cited. In that case, an engineer sought damages for discharge from employment for violating operating rules. The lower court granted defendant's motion for a directed verdict and plaintiff appealed. The upper court affirmed the ruling of the lower court, thus holding that the cause for dismissal was sufficient and just.

In the case of Thomas v. New York, Chicago & St. Louis R. R. Co., supra, the Court said:

"* * * Appellant was entitled to reinstatement only if wrongfully discharged; he was wrongfully discharged only if some right arising out of contract or the law was violated by his discharge. No evidence was introduced from which the court could draw such a conclusion." 185 F.2d p. 616

It is claimed that the Board's action in refusing to allow back pay until September 27, 1958 rather than from May 18, 1958, the date of discharge by the defendant shows that the action of the Board was improper. If the Board felt that Russ was blameless, it would necessarily have had to direct his restoration with back pay to the date from which he was discharged instead of penalizing him to the extent of more than four months' pay. Thus, the Board held that the discipline was not unwarranted, but undertook to modify the discipline that had been administered.

We are in accord with the view of the Court as expressed in Tinnon v. Missouri Pacific Railroad Company, supra, that it

is the prerogative of the Railroad to require obedience to its rules. The rules were made for the benefit of the employees, including Russ, the Railroad's equipment and the public generally, and the Railroad could not be successfully operated without authority in its officers to make rules, interpret them and to require obedience to them.

The Board further found that "on September 27, 1958 * * * J. D. Cox was restored to service on a leniency basis, without pay for time lost, as carrier was of the opinion the discipline thus far assessed was sufficient punishment for his offense. * * * The issue is not one of degree of claimant's responsibilities and we need not define the extent of each. The carrier having determined that the punishment for one was sufficient, there is a wide disparagement in the punishment of the other, which cannot be justified."

The Board thus held that although discipline of Russ by the Railroad was proper for his infraction of the safety rules, the punishment was too severe.

As various courts have pointed out, the Board has experience in dealing with railroad labor agreements, grievances arising under them, their interpretation, and its expertise in such matters is considered vital in reaching correct results. For these reasons, its findings and conclusions are entitled to respect. This does not mean that it can usurp the prerogative of Management to discipline employees for violation of safety rules. It does mean that it may determine after a full hearing whether the discipline imposed by Management is too severe and if it so determines, fashion a remedy within the framework of the bargaining agreement which is fair to both the carrier and the employee. We are of the opinion that the evidence supports the finding of the Board that the penalty of permanent termination of work for a man sixty-six years old in a field in which he had given thirty-six years of his life—six years more than half of his life—with an unblemished record to May 8, 1958, the day of the accident, was too severe.

We are further of the opinion that the order of the Board restoring Russ to duty with pay as of September 27, 1958 is within the framework of the bargaining agreement between the Brotherhood of Locomotive Engineers and the Southern Railway Company and is valid and enforceable.

Present order awarding plaintiff the stipulated sum of $22,903.05.