**BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYEES, Plaintiff,**

v.

**MISSOURI–KANSAS–TEXAS RAIL-ROAD COMPANY, a Missouri corpora-tion, Missouri-Kansas-Texas Railroad Company of Texas, a Texas corporation, and Missouri-Kansas-Texas Railroad Company, a Delaware corporation, De-fendants.**

Nos. 63 C 133(1)–63 C 135(1).

United States District Court
E. D. Missouri, E. D.

Nov. 24, 1965.

Carroll J. Donohue, Husch, Eppenberger, Donohue, Elson & Jones, St. Louis, Mo., Richard R. Lyman, Mulholland, Robie & Hickey, Toledo, Ohio, for plaintiff.

G. Carroll Stribling, Fordyce, Mayne, Hartman, Renard & Stribling, St. Louis, Mo., and W. A. Thie and M. E. Clinton, Denison, Tex., for defendants.

HARPER, Chief Judge.

The three cases consolidated in this action were separate actions brought by the Brotherhood of Maintenance of Way Employees to enforce three separate awards of the National Railroad Adjustment Board involving a dispute between the plaintiff and the defendants, Missouri-Kansas-Texas Railroad Company, a Missouri corporation, and Missouri-Kansas-Texas Railroad Company of Texas, a Texas corporation. The Missouri-Kansas-Texas Railroad Company, a Delaware corporation, is the corporate successor of the two other Missouri-Kansas-Texas lines. The dispute involves the contracting of work out to independent contractors by the railroads, which work is claimed by the Brotherhood members. For the sake of clarity the three corporate defendants will be hereinafter referred to as the Railroad, and the plaintiff will be referred to as the Brotherhood or the Union.

The Railroad operates tracks throughout Texas, Oklahoma, Kansas and Missouri. As part of its operation it owns and supplies a variety of freight cars at various points along its trackage. At various points along its line the Railroad has areas for cleaning debris from the various cars so that the material to be shipped in the cars will be free from contamination from the past shipment. At three points along the line (LaDue, Missouri; West Mineral, Kansas; and Checotah, Oklahoma) certain coal cars were cleaned in the preparation for delivery to various coal mines in the area. The cleaning of these coal cars at these three points is the issue of dispute between the parties. The Brotherhood claims that through practice and custom the job of cleaning the cars belongs to the employees of the Railroad who are members of the Brotherhood stationed at these points.

In February and March of 1956 the Railroad contracted this work out to independent contractors on a fee basis, allowing a payment of one dollar per car to the contractor. The Brotherhood filed a complaint before the Third Division of the National Railroad Adjustment Board, and on November 17, 1961, the Board handed down its decision sustaining the Brotherhood's claim that the Railroad's contracting of work violated the Seniority Clause of the Collective Bargaining Agreement between the Brotherhood and the Railroad, dated 1949. Subsequent to this award the plaintiff brought these actions to enforce the awards pursuant to the provisions of 45 U.S.C.A. § 153 First (p), which gives this court jurisdiction in this matter.

At the trial various issues of law were raised along with the substantial questions of fact. To dispose of these cases it is necessary to consider the following problems: The effect and force of the Board's award, the question of a trial de novo, custom and practice of assigning work, and breach of the Seniority Clause by the railroad. They will be discussed in the above order.

■ The suits to enforce the award given by the Board are commenced with a decided advantage for the plaintiff. It is universally held that the award is prima facie evidence of the facts therein stated. Order of Railroad Telegraphers v. Railway Express Agency, Inc., 321 U.S. 342, 345, 64 S.Ct. 582, 88 L.Ed. 788 (1944). As such, it has the weight of expert testimony when being weighed against other presented evidence. Washington Terminal Co. v. Boswell, 75 U.S. App.D.C. 1, 124 F.2d 235, 241 (1941), aff'd 319 U.S. 732, 63 S.Ct. 1430, 87 L. Ed. 1694 (1943).

■■ However, it has this effect *only* for the material contained therein. The award also has the effect of stating, with finality, the claim of the plaintiff. Once the Board has ruled on the claim of the

plaintiff he cannot change his claim or his theory of recovery before the court. Baltimore & Ohio R. R. Co. v. Brady, 288 U.S. 448, 53 S.Ct. 441, 77 L.Ed. 888 (1933). The claim that was sustained by the Railroad Adjustment Board was that the contracting out of car cleaning at LaDue, Missouri, Checotah, Oklahoma, and West Mineral, Kansas, violated the Seniority Clause of the Labor Agreement between the Union and the Railroad. The plaintiff in presenting its case may rely on the awards as was done here to establish evidence of the facts stated in the award.

■ After an award has been entered by the Railroad Adjustment Board, the injured party may sue to enforce the award in an appropriate district court. The suit to enforce is a trial de novo, which means a complete, new trial, with no limitation as to the evidence brought in by the defendant. While the plaintiff argues that this is a burden to the plaintiff, this court cannot sustain plaintiff's objections to the introduction of pertinent evidence by the Railroad. The suit to enforce is much more than a mere review of the Board's award It is a new hearing, a trial de novo. To allow the defendant a second chance to present evidence, particularly evidence which was not presented to the Board, would seem to have been the congressional intent and will not be thwarted by the courts in a seeming attempt to do alleged justice. Brotherhood of Railway & Steamship etc. v. Atlantic Coast Line R. R. Co., 253 F.2d 753, 758 (4th C.C.A., 1958).

In the case of Brotherhood of Railroad Trainmen v. Louisville & Nashville Railroad Co., 334 F.2d 79, 83 (5th C.C.A., 1953), it was said:

"* * * section 153(p) provides for a trial de novo 'in all respects as other civil suits,' except for the special weight accorded the Board's order, and a trial de novo contemplates a trial of the entire controversy, including the introduction of evidence not limited to that brought in at the previous hearing."

The Louisville & Nashville case, supra, cites Spano v. Western Fruit Growers, 83 F.2d 150, 152 (10th C.C.A., 1936), Callan v. Great Northern Ry. Co., 299 F.2d 908, 913 (9th C.C.A., 1961), and Butler v. Thompson, 192 F.2d 831, 833 (8th C.C.A., 1951).

■■ Plaintiff argues that no case has ever been decided by the United States Supreme Court with an opinion affirming the concept of a complete trial de novo. This may well be true, but the plaintiff overlooks the simple principle that the Supreme Court's decisions are the law of the land, with or without opinions accompanying them. Washington Terminal Co. v. Boswell, supra, was affirmed without opinion, and is as binding on this court as would be a decision in which an opinion was written. Our own Eighth Circuit Court has written an opinion concerning the trial de novo, and until such time as this case is overruled this court will apply it as law. Boos v. Railway Express Agency, Inc., 253 F.2d 896 (8th C.C.A., 1958).

Plaintiff's objections to the introduction of evidence at trial which was not presented to the Railroad Adjustment Board is hereby overruled.

■ Plaintiff claimed that it was the custom of the Railroad to assign the Maintenance of Way employees the jobs of cleaning coal cars at the three cleaning areas involved in these cases. The defendant introduced evidence as to the system-wide practice. The system-wide practice was to have any one of a variety of parties do the work of cleaning cars. It might have been the shipper, or clerical workers, or carmen, or station laborers, or section laborers, or extra laborers hired by the station agent, or independent contractors. At various locations the work of cleaning the cars was assigned to the livestock department laborers (Tr. pp. 128–130). The Brotherhood alleges that the local points would be the only points considered since the Board found the practice to exist at these points. The Railroad alleges that the entire system should be examined since the

agreement that the Brotherhood claims was violated was system-wide in application.

Although the court can find some merit in plaintiff's contention, it feels that faced with a choice between the two the defendant's choice is by far the more reasonable. The provisions of the contract between the Railroad and its employees are system-wide in scope, have been agreed upon after consideration of all of the employees of the Railroad, and were ratified by the total membership of the employees. There is no local negotiations, no provisions within the contract of a strictly local nature. The language, terms and provisions agreed to by both parties are system-wide in their scope.

However, if the system-wide practice were not even considered by this court it could not agree with plaintiff's contention, for a much more logical area to consider would be the district or division. The Seniority Clause applicable to this dispute (Plaintiff's Exhibit 10, Article 3, Rules 2 and 3) states that the seniority shall begin upon the placing of the employee upon the payroll within a particular gang or section crew. The clause continues that the seniority shall apply within a superintendent's district or a roadmaster's district. This application of the territorial limits of each group's seniority privilege leads the court to the view that such district would be the proper entity to search to determine the practice and custom.

After examining the exhibits of the Brotherhood (Plaintiff's Exhibits 1–A, 2–A and 3–B in its request for admissions) this court would find that the practice of the Railroad was to assign available employees to clean the cars that came to the particular point for preparation for delivery to the customers of the Railroad. So that, within Seniority District #3, the court would find that the depot at Appleton City, Missouri, had carmen, sectionmen, and Missouri-Pacific contractors cleaning cars from 1949 to 1955 (Tr. pp. 135–147). At Fort Scott, Kansas, the clerical employees cleaned the cars from 1949 to 1951 (Tr. p. 155), and, of course, the Brotherhood's allegation that the Maintenance of Way employees cleaned the cars at LaDue, Missouri, is undisputed.

In Seniority District #7 the court would find that the Maintenance of Way men cleaned the cars at West Mineral, Kansas, but at Parsons, Kansas, the car department employees performed the work (Tr. pp. 71, 73, 151), and at Muskogee, Oklahoma, the carmen did the work (Tr. pp. 150–152).

As for the seniority list for District #8 (Plaintiff's Exhibits 3–A through 3–C), the court could not find any mention of the fact that there were any members of the Brotherhood stationed or assigned to Checotah, Oklahoma, prior to January 1, 1957.

The court mentions these particular points because these were points where members of the Brotherhood were assigned but did not do the car cleaning work. There were many other points where the cleaning was done by those other than Maintenance of Way employees, but there was no evidence that such Maintenance of Way employees were assigned to those points.

Under none of the circumstances presented in this case can the court find that the appropriate area to examine in order to determine custom or practice was the local point, or the individual shop. The testimony and exhibits establish that the practice of the Railroad was to assign the job of car cleaning to various persons, some of them the employees of the Railroad, others employees of a shipper, and still others were independent contractors. The court cannot reasonably say that the job of cleaning coal cars requires such a unique skill that all of the coal cars were deliberately routed to the point where Maintenance of Way employees were located. With the description of the method of cleaning coal cars the court is of the opinion that anyone could do the work, and the Brotherhood's contention that it has been, by custom, the right of the members of the Brotherhood to clean all coal

cars seems less than realistic. The Maintenance of Way employees happened to be cleaning coal cars because they happened to be available at the point where it was expeditious for the Railroad to clean them before delivery.

█ Even had the Brotherhood shown that it was the practice and custom of the Railroad to assign the cleaning of cars to the Brotherhood membership, they could not prevail. The Brotherhood has not made out a plausible case for the showing of the Railroad's violation of the Seniority Clause. This clause protects one employee from another employee taking his job when the first man has had a longer period of employment. Its purpose is to determine priority of rehiring and call-ups when there has been a layoff or cut-back. It also provides employment security, for a member of one gang, or section crew, may displace another with less seniority in the same district where the job of the first has been eliminated. It governs the treatment of the employees by the Railroad. However, in the present case there would appear to be no breach of the seniority provisions. It was a matter of eliminating some duties by contracting out the work and not giving the chores to one with less seniority. It was not a question of raising an employee above another who had more seniority, but of elimination of labor available for assignment. Brotherhood relies upon the wrong concept of what the Railroad has done.

█ The Brotherhood attempts to rectify its mistake by citing to the court the case of Fibreboard Paper Products Corp. v. NLRB, 379 U.S. 203, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964), to show that the Railroad has failed to bargain over a bargainable issue. Unfortunately for the Brotherhood, its claim of failure to bargain cannot be brought before this court at this time. The provisions of 45 U.S.C.A. § 153 first specifically state that the disputes growing out of an interpretation or application of the agreement shall be first brought before the Adjustment Board. Since the Brotherhood has not raised this issue before the Board, it can-

not now raise it. Baltimore & O. R. R. Co. v. Brady, supra. The Brotherhood has elected to proceed in their dispute over the interpretation or application of the agreement, and it is the ruling of this court that the seniority clause has no application to the contracting of this work to outside concerns.

█ The Brotherhood attempts to make the transaction appear tainted with fraud by insinuating that the contractors are ex-employees of the Railroad. Even if this allegation were true it would in no way affect the transaction. The fact, uncontroverted by the plaintiff, is that the independent contractors were not at that time employees of the Railroad and did not fall within the provisions of the seniority clause of the Agreement.

The court will accordingly enter judgment for the defendants in the three consolidated cases. This memorandum opinion is adopted by the court as its findings of facts and conclusions of law, and the clerk will prepare and enter the proper judgment.